# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **KELLI LYNNE S-S.,[1]** ) | |
|   **f.k.a. KELLI LYNNE C.** ) | |
| ) | |
|        **Plaintiff,** ) | |
| ) | **CIVIL ACTION** |
| **v.** ) | |
| ) | **No. 20-1207-JWL** |
| **KILOLO KIJAKAZI,[2]** ) | |
| **Acting Commissioner of Social Security,** ) | |
| ) | |
|        **Defendant.** ) | |
| _____) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614, Title II and Title XVI, respectively, of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act).  Finding no error in the Administrative Law Judge's (ALJ) application of Social Security Ruling (SSR) 12-2p, the court ORDERS that judgment

---

[1] The court makes all its "Memorandum and Order[s]" available online.  Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On July 9, 2021, Kilolo Kijakazi was sworn in as Acting Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Kijakazi is substituted for Commissioner Andrew M. Saul as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.      Background

Plaintiff protectively filed applications for DIB and SSI benefits on September 1, 2017.  (R. 15, 209, 216).  After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  Plaintiff claims the ALJ erred in several ways in applying SSR 12-2p in his evaluation of this case.

The court's review is guided by the Act.  Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).  Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  "Substantial evidence" refers to the weight, not the amount, of the evidence.  It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it."  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

2

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the

3

Commissioner assesses the claimant's residual functional capacity (RFC).  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, the claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in Plaintiff's Social Security Brief.

## II.    Discussion

Plaintiff alleges the Commissioner's decision is not supported by substantial evidence because the ALJ failed to "follow the guidance of Social Security Ruling 12-2p."  (Pl. Br. 12).  She argues, "Failure to even mention [SSR 12-2p] is reversible error." Id. at 13 (citing C.D.M. v. Saul, Case No. 19-1135-JTM, 2020 WL 5802075, *2-3 (D. Kan. Sept. 29, 2020)).  Plaintiff argues, "The ALJ erred by failing to consider whether the claimant's fibromyalgia equaled listing 14.09[D]."  Id. at 14 (italics omitted).  She argues the ALJ failed to assess her RFC with proper consideration of her supervisor's testimony,

4

of her husband's statements, or of her employer's statements.  (Pl. Br. 15-17) (citing SSR 12-2p).  Plaintiff argues, "The ALJ failed to properly evaluate [sic] the consistency of the claimant's testimony in light of SSR 12-2p." Id. at 17 (italics omitted).  Finally, Plaintiff concludes, "The ALJ's failure to evaluate the case under SSR 12-2p affects the probative value of the Consultative Examination." Id. at 18.

The Commissioner argues the ALJ properly applied SSR 12-2p and assessed an RFC in accordance with SSR 12-2p and all appropriate considerations.  In her Reply Brief, Plaintiff argues the ALJ failed properly to apply the sequential evaluation process as instructed in SSR 12-2p (Reply 1-3), failed to consider adequately the lay opinion evidence in light of SSR 12-2p; id., at 3-4; and failed to provide the "full longitudinal record" to the consultative examiner as required by SSR 12-2p.  Id. at 4.

### A.    The ALJ's Findings

The court here provides a partial summary of the ALJ's decision as it relates to the issues presented in this case.  The ALJ found that Plaintiff engaged in substantial gainful activity from January 2016 through September 2017 but noted that Plaintiff's "employer did complete a work activity questionnaire indicating that the claimant's productivity was 50 percent or less than that of other employees (Exhibit 3D/2), indicating that subsidy may be involved." (R. 18).  He found Plaintiff had severe impairments of fibromyalgia and anxiety "determined by medically acceptable evidence including signs, symptoms, and laboratory findings." Id.

The ALJ found Plaintiff has no "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part

404, Subpart P, Appendix 1." (R. 19) (citing 20 C.F.R. §§ 404.1520(d), 404.1525,

404.1526, 416.920(d), 416.925, 416.926) (finding no. 5, bolding omitted). The ALJ

specifically noted the criteria of Listing 12.06 are not met or medically equaled, and

explained his evaluation of each of the four broad areas of mental functioning (the

paragraph B criteria) including his findings regarding the third broad area of functioning:

> The [third] functional area addresses the claimant's ability to concentrate,
> persist, or maintain pace. For this criterion, the claimant has moderate
> limitations. The claimant contended that she has limitations in maintaining
> concentration, following instructions, and completing tasks. On the other
> hand, the claimant said that she is also able to work part-time, drive,
> prepare simple meals, and manage funds (Exhibit 11E). Additionally, the
> record fails to show any mention of distractibility. Her mental status
> examination in December 2017 revealed that the claimant was able to
> attend to and process simple and intermediate information. She could solve
> all seven math problems, perform serial two subtractions and serial three
> additions accurately. On serial seven subtractions, she made only one error.
> She could perform a two-step command and spell the word "world" in
> reverse. She could repeat five digits backwards and four digits in reverse
> (Exhibit 4F/2). Overall, the evidence supports that the claimant has no
> more than a moderate limitation in concentration, persistence or pace and
> retains the capacity for simple and intermediate level tasks.

(R. 19-20).

The ALJ assessed an RFC for a range of sedentary work:

> work requiring lifting and/or carrying 20 pounds occasionally and 10
> pounds frequently, standing for 3 hours in an 8-hour day with normal
> breaks; walking for 2 hours in an 8-hour day one hour maximum at one
> time for a total of 5 hours standing and walking in an 8-hour workday. The
> claimant can sit 7 hours in an 8-hour day with normal breaks, with pushing
> and pulling limited to those same weights. The claimant can frequently
> climb stairs and ramps; occasional climb ladders [sic] and scaffolds;
> frequently balance, stoop, kneel, crouch, and crawl. The claimant can
> frequently use foot controls. She can tolerate frequent exposure to extreme
> cold and heat, vibrations and hazards such as unprotected heights and
> hazardous machinery and frequently operate a motor vehicle. The claimant
> has the ability to understand and remember simple and intermediate level

instructions, maintain concentration, persistence and pace to complete simple and intermediate level tasks sufficient for a semi-skilled, SVP [(Specific Vocational Preparation)] 4 level position and adapt to normal changes in a work environment with the above limitations.

(R. 20).

He explained he assessed a sedentary rather than a light exertional level because, "the restriction of the claimant to standing for 3 hours in an 8-hour day and walking for 2 hours in an 8-hour day one hour maximum at one time results in an essentially sedentary level of limitation." Id. at 20-21. He noted that in assessing RFC he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p." Id. at 21.

The ALJ noted Plaintiff's testimony:

that she first got sick in December 2015 and eventually went to the doctor in January 2016. She explained that she was weak, with a low grade fever, swollen glands and joint pain. Eventually, she was diagnosed with fibromyalgia that has not improved. She testified that in the beginning she needed help walking to the bathroom or the kitchen and that after about six months her symptoms started to level out. Now, she has about five hours a day that she can function – she explained that she is able to do dishes and go to work. After working for four hours, she goes home to rest for four hours; then she cooks a meal for her family and that is about all she can do.

The claimant described her pain as all over her body, but stated that the pain is worse on the left side. She said that the pain affects her concentration and at times, her ability to sleep.

Id. He noted the testimony of Plaintiff's supervisor, Ms. Wingert,

that when the claimant initially started working, she was working 28 hours a week, but that eventually her hours were reduced to 12 per week. She stated that now she needs to oversee the claimant more than she used to and sometimes the claimant cannot even work the 12 hours a week.

(R. 21).  He found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in th[e] decision."  Id.

The ALJ summarized the medical evidence regarding Plaintiff's physical condition:

> The medical evidence reflects that the claimant is being treated for fibromyalgia and anxiety.  While the claimant has reported the inability to work due to a combination of physical and psychological symptoms, the objective medical evidence does not support the claimant's allegations of disabling impairments.  Given these circumstances, it becomes necessary to consider the credibility evaluation factors from Ruling SSR 96-7p along with the record as a whole in order to determine whether the claimant is as limited as she has alleged.
>
> As noted above, the claimant testified that she first began feeling sick and weak in December 2015 and presented to the doctor in January 2016.  Records from PrairieStar Health Center document that the claimant did complain of abdominal pain on January 5, 2016, generally around the time of ovulation (Exhibit 1F/5[3] [(R. 396)]).  A pelvic ultrasound was performed on January 14, 2016, but returned normal results (Exhibit 1F/11 [(R. 402)]).
>
> Her only intermittent treatment records from the Hutchinson Clinic document complaints for temporary conditions until she returned on June 6, 2017 to report body aches, pain and fatigue.  Here, she told the Dr. Schlotterback that this had been "going on for some time off and on" but that she had been able to "modify her work schedule for this."  She described her symptoms as mild to moderate (Exhibit 2F/40 [(R. 450)]).  On examination, the claimant showed normal range of motion at the shoulders, elbows and wrists.  Her musculature was symmetric and no atrophy was noted.  Her handgrips were equal.  However, her back and spine demonstrated body aches and pains consistent with fibromyalgia (Exhibit 2F/41 [(R. 451)]).
>
> Thereafter, the claimant presented for an evaluation with rheumatology on October 15, 2017.  Here, she reported morning stiffness of her hands,

---

[3] The court notes this appears to be a typographical error because the information cited appears at Ex. 1F/4.  (R. 395).

wrists, elbows, shoulders, feet, ankles, knees and hips, as well as back stiffness. She denied any swollen joints but reported that her joints were achy (Exhibit 3F/1 [(R. 496)]).

Her examination revealed tenderness to palpation of several proximal interphalangeal joints, all metacarpophalangeal joints, wrists, elbows, and shoulders with range of motion. Hip range of motion elicited groin discomfort. Her ankles were tender and there were positive tender points. However, there was no evidence of swelling of the knees. Clinical impression was fibromyalgia/inflammatory arthritis (Exhibit 3F/2 [(R. 497)]).

No follow-up appears in the record, so the claimant attended a physical consultative evaluation on January 24, 2019 with James Henderson, M.D. (Exhibit 7F [(R. 542-52)]). The claimant told Dr. Henderson that she could sit for 45 minutes, stand for 15 minutes and walk for 10 to 15 minutes (Exhibit 7F/2 [(R. 543)]).

On examination, there were tender points appreciated at insertion of the nuchal muscles into the occiput, the upper trapezius, the pectoralis muscle just lateral to the second costochondral junction,[4] the upper gluteal areas, and the medial knees. All controls were negative. The claimant's reflexes were symmetrical, her motor function was normal, and she demonstrated no loss of sensation (Exhibit 7F/3 [(R. 544)]). Further, she evidenced no difficulty getting on and off the exam table, with heel/toe walking, squatting and arising, or hopping (Exhibit 7F/4 [(R. 545)]). Dr. Henderson also indicated that the claimant walked normally and did not use an assistive device. As regarding her hands, she had 40 pounds of grip strength in both hands and all joints tested were normal without redness, effusion, or active inflammation. Dexterity was preserved.

Overall, the claimant's complete treatment records do not document the limitations she subjectively alleges or otherwise establish functional limitations that would preclude the range of sedentary exertion established in the residual functional capacity, above.

(R. 22-23).

---

[4] The court notes the ALJ did not include here the positive trigger points Dr. Henderson found "2 cm below the lateral epicondyles" (R. 544), but he later recognized Dr. Henderson found "six positive paired trigger points," not just the five pair mentioned here. (R. 25).

The ALJ provided an explicit evaluation of Plaintiff's allegations of symptoms resulting from her impairments:

> Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c), 416.929(c) and Social Security Ruling 96-7p describe the kinds of evidence, including the factors below, that the undersigned must consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements: (1) the claimant's activities of daily living, (2) the location, duration, frequency, and intensity of pain or other symptoms, (3) precipitating and aggravating factors, (4) the type, dosage, effectiveness, and side effects of medications taken to alleviate pain or other symptoms, (5) treatment, other than medication, for relief of pain or other symptoms, (6) any measures other than medication used to relieve pain or other symptoms, and (7) any other factors concerning functional limitations and restrictions due to pain or other symptoms produced by medically determinable impairments.

> The claimant's allegations of limitations are given weight to the extent that she is reduced to a level of work as outlined herein.  However, the claimant's allegations of disabling limitations are not supported by the objective medical evidence and examination findings as noted above.

> The claimant does carry a diagnosis of fibromyalgia; however, she reports symptoms of extreme fatigue and cognitive issues as well as pain. Nevertheless, she has continued to work throughout the period at issue, although at a part-time level.  As discussed above, she apparently worked 28 hours a week at Waggoners, but she appeared to earn substantial gainful activity while doing so.  An Employee Questionnaire completed in October 2017 confirmed that the claimant requested to have her hours reduced to twelve hours per week in July 2017 (Exhibit 8E [(R. 301-02)]).  However, according to the claimant's new hire wage query, she continued to earn wages at the substantial gainful activity level through the third quarter of 2017 (Exhibit 8D [(R. 239-40)]).  Further, although the employer report indicated that the claimant missed work or came in late, there is no objective evidence in the record to support that the claimant's conditions were what caused her to miss work.

> For example, the complaints noted in the records from PrairieStar Health Clinic are for temporary conditions including abdominal pain and ear pain (Exhibit 1F/2, 5 [(R. 393, 396)]).  In April 2017, the claimant was evaluated for adenopathy that waxed and waned (Exhibit 2F/43 [(R. 453)]), along

with swollen lymph nodes and a low grade fever, which is usually associated with an infection and not necessarily related to fibromyalgia. Further, there is an indication in February 2018 that the claimant's rheumatologist wanted to test her for possible Sjogren's syndrome; however, there is no indication in the record that this was ever completed (Exhibit 6F/1 [(R. 539)]).

Further, despite the complaints of allegedly disabling symptoms, the claimant has not taken any medications for those symptoms. When she presented for her rheumatology evaluation on October 15, 2017 with Dr. Regier, the claimant indicating that she was "very much against" taking any prescription medications.  However, she did use CBD oil and acupuncture (Exhibit 3F/1 [(R. 496)]).  Although Dr. Reiger recommended hydroxycholorquine, noting that she believed that the claimant could see "dramatic improvement" in her symptoms, the claimant declined (Exhibit 3F/2 [(R. 497)]).  Similarly, when the claimant saw Dr. Henderson for her consultative evaluation in January 2019, she reported that therapy had been recommended but she "could not continue" (Exhibit 7F/2 [(R. 543)]). However, there is nothing in the record to indicate that the claimant ever attended therapy.

Ultimately, the claimant's limitations are contemplated by the residual functional capacity.

(R. 23-24).

The ALJ found Dr. Henderson's opinion more persuasive than the prior administrative medical findings of the state agency medical consultants and found both the opinion of Dr. Berg and the prior administrative medical findings of the state agency psychological consultants persuasive.  Id. at 25.  The ALJ concluded his evaluation of Plaintiff's mental limitations:

Although the claimant's employer indicated that the claimant occasionally messed up complex tasks, Dr. Berg felt that she was capable of semi-skilled work activity, which could be partly due to anxiety and partly due to her symptoms of fibromyalgia (Exhibit 4F/3 [(R. 498)]).

On her activity report, the claimant indicated that she was able to care for her children, prepare meals, perform household tasks, drive, prepare meals, manage finances, and shop (Exhibit 6E [(R. 280-88)]).  Overall, there is

nothing in the record to indicate limitations that are more severe than those indicated by the state agency psychologists or Dr. Berg.

(R. 25).

The ALJ concluded at step four of the sequential evaluation process that Plaintiff is able to perform her past relevant work as a data entry operator and went on to conclude alternatively at step five that there are other jobs in the economy of which Plaintiff is capable. Id. at 25-26. The alternative, representative jobs of which the ALJ found Plaintiff capable are: information clerk, bench hand, and document preparer. Id. at 26.

## B.    Failure to Consider SSR 12-2p

Much of Plaintiff's argument fails because it rests on a misunderstanding of the difference between a requirement for the ALJ to consider and a requirement for him to articulate his consideration of certain standards or evidence. She asserts that the ALJ did not state he applied SSR 12-2p and that he, therefore, did not apply that SSR. There is no requirement that an ALJ articulate, state or cite, each legal standard which he applies. There are hundreds of Social Security Rulings ranging from those which are clearly irrelevant to this case, such as SSR 64-4, Mothers Insurance Benefits, to those which may be relevant here; SSR 82-52, Duration of the Impairment; SSR 00-4p, Use of Vocational Expert and Vocational Specialist Evidence; SSR 96-8p, Assessing Residual Functional Capacity; SSR 12-2p, Evaluation of Fibromyalgia; SSR 16-3p, Evaluation of Symptoms in Disability Claims; etc. While it might have been helpful for the ALJ to state he applied SSR 12-2p in reaching his decision, it is not required. The ALJ cited the regulations controlling his consideration of Plaintiff's impairments, of her allegations of

symptoms, of the evidence, of the medical opinions and the prior administrative medical findings, and of his assessment of Plaintiff's RFC. He clearly applied the regulations cited, and the decision suggests he also applied SSR 12-2p. (R. 18) (fibromyalgia "determined by medically acceptable evidence including signs, symptoms, and laboratory findings"), (R. 21) ("she was diagnosed with fibromyalgia"), (R. 22) ("being treated for fibromyalgia," "body aches and pains consistent with fibromyalgia," "Clinical impression was fibromyalgia/inflammatory arthritis"), (R. 24) ("swollen lymph nodes and a low grade fever, which is usually associated with an infection and not necessarily related to fibromyalgia"), (R. 25) ("objective findings showing six positive paired trigger points with negative controls," "partly due to her symptoms of fibromyalgia").

While Plaintiff cites evidence and circumstances which, in her view, justify finding that SSR was not applied, she does not point to evidence which compels such a finding. Because the evidence supports the ALJ's finding and supports that the ALJ properly applied the SSR, the court may not find otherwise. Moreover, the cases cited by Plaintiff do not require a different result. In C.D.M. v. Saul, the plaintiff argued the ALJ failed to "assess her fibromyalgia in a manner consistent with SSR 12-2p" and the court found "the ALJ erred in failing to apply the Ruling." 2020 WL 5802075 at *2, 3. Here, the court finds the ALJ applied the ruling, so the error found in C.D.M. does not appear. This court recognizes that in C.D.M., the court also stated "the ALJ failed to apply or discuss SSR 12-2p." Id. at *3 (emphasis added). To the extent the C.D.M. court relied upon the failure to discuss SSR 12-2p as error, the court notes there is no such thing as "the law of the District of Kansas," and as noted above, discussing an SSR relied upon is

not required in a Social Security disability decision.  Therefore, to the extent the <u>C.D.M.</u> court found error in the failure merely to discuss the ruling, this court does not find that decision persuasive.

Plaintiff's argument regarding <u>J.M.V. v. Berryhill</u>, Case No. 18-1202-JWB, 2019 WL 2393165 (D. Kan. June 6, 2019) is readily distinguished from this case.  There, the plaintiff alleged error because the record contained considerable evidence that the plaintiff had fibromyalgia but the ALJ did not discuss it nor consider whether fibromyalgia was a medically determinable impairment.  <u>Id.</u> 2019 WL 23293165 at *3.  The Commissioner acknowledged the ALJ did not discuss fibromyalgia or the evidence related to it but argued that the error was harmless.  <u>Id.</u>  The court concluded it could not find the failure to consider fibromyalgia was harmless and remanded "for the ALJ to consider the evidence concerning fibromyalgia and its impact on Plaintiff's claim."  <u>Id.</u> at 5.  Here, there can be no doubt the ALJ found fibromyalgia is a medically determinable severe impairment and discussed it extensively in his decision.  Moreover, as found above, he considered it in accordance with SSR 12-2p.  The court finds the ALJ did not fail to consider SSR 12-2p.

## **C.**     **Listing 14.09D**

Plaintiff points out SSR 12-2p notes there is no Listing for fibromyalgia, which can therefore never meet a Listing, but that the agency will "determine whether [fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment."  (Pl. Br. 14) (quoting SSR 12-2p).

She argues the ALJ never addressed whether Plaintiff's fibromyalgia, alone or in combination with her anxiety medically equals Listing 14.09D.  Id.

Plaintiff complains the ALJ did not consider any listing that might be medically equaled by Plaintiff's impairments, but she does not argue any specific Listing is medically equaled.  Plaintiff's Brief acknowledges Listing 14.09D requires a marked level of limitation in either activities of daily living, maintaining social functioning, or completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.  (Pl. Br. 14) (citing 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 14.09D).  Contrary to Plaintiff's assertion, the ALJ did address whether fibromyalgia alone or in combination medically equals Listing 14.09D, he specifically found she "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  (R. 19) (finding no. 5, bold omitted, emphases added).  Moreover, as the Commissioner suggests, the ALJ discussed Plaintiff's activity report (daily activities), noting "she was able to care for her children, prepare meals, perform household tasks, drive, prepare meals, [sic] manage finances, and shop."  (R. 25) (citing Ex. 6E).  He concluded, "there is nothing in the record to indicate limitations that are more severe than those indicated by the state agency psychologists or Dr. Berg."  Id.  He discussed Plaintiff's ability to interact with others (social functioning) and found only mild limitations.  Id. at 19.  He discussed Plaintiff's ability to concentrate, persist, or maintain pace and found only moderate limitations.  Id.

Again, the ALJ is not required to articulate in his decision every Listing which might potentially be medically equaled by a claimant's condition or impairments and to

explain why it is not medically equaled.  Therefore, when Plaintiff's Brief implied that her condition medically equals Listing 14.09D it was not post hoc rationalization for the Commissioner to explain why Plaintiff's condition does not medically equal the Listing, It was simply the Commissioner's response to the implied argument, pointing out the facts and the findings of the ALJ which negate Plaintiff's argument and support the ALJ's decision.  Plaintiff has shown no error in the ALJ's step three consideration.

### D.    Consideration of Lay Witness Statements

Plaintiff points out that people with fibromyalgia may have nonexertional physical or mental limitations because of their pain or other symptoms and that the ALJ must consider all the evidence in the case record including "statements by other people about the [claimant's] symptoms.  (Pl Br. 16) (quoting SSR 12-2p).  Plaintiff argues the ALJ did not adequately consider the testimony and statements of her supervisor, Ms. Wingert, of her husband, and of her employer when assessing the limitations resulting from her fatigue.  Id. at 16-17.  The Commissioner points out the ALJ specifically discussed one of the employer's questionnaires and Plaintiff's allegations of fatigue.  (Comm'r Br. 16-17). She also argues that the statements of Plaintiff's husband were "essentially cumulative of the evidence the ALJ expressly considered from Plaintiff and her employer," and there was no reversible error.  Id. at 16.  Plaintiff reiterates her arguments in her Reply Brief and points out that SSR 12-2p explains that statements from nonmedical sources can help "assess the person's ability to function on a day-to-day basis over time and assist in making credibility determinations about a claimant's symptoms and their effects on [claimant's] ability to function."  (Reply 4).  She argues the ALJ erred because he never

mentioned her husband's statements or the questionnaire completed by her employer's vice president, Mr. Schumm, and never referenced the testimony of Ms. Wingert.  Id.

Once again Plaintiff confuses the consideration requirement explained in SSR 12-2p with a requirement to articulate that consideration in the decision at issue.  Plaintiff filed this case on September 1, 2017.  (R. 15, 209, 216).  Therefore, the new regulations on considering opinion evidence are applied to this case.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 2017 WL 168819 (SSA Jan. 18, 2017).  Those regulations define five categories of evidence including objective medical evidence, medical opinion, other medical evidence, evidence from nonmedical sources, and prior administrative medical findings.  20 C.F.R. § 404.1513 (emphasis added).  "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including [the claimant]) about any issue in your claim.  We may receive evidence from nonmedical sources either directly from the nonmedical source or indirectly, such as from forms we receive and our administrative records."  20 C.F.R. § 404.1513(a)(4).  The regulations include a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."  20 C.F.R. § 404.1520c.  That regulation explains that the SSA is not required to articulate how it considered evidence from nonmedical sources.  20 C.F.R. § 404.1520c(d).

The regulations specifically provide that the SSA is not required to articulate how it considered nonmedical evidence.  Therefore, SSR 12-2p's requirement to consider all evidence does not imply a requirement to articulate the consideration of nonmedical

17

evidence such as the third-party statements at issue here.  Therefore, the question before the court is whether the ALJ considered the statements at issue, and it finds no error.  The ALJ specifically noted his consideration of the employer's work activity questionnaire (R. 18) (citing Ex. 3D (signed by Ms. Wingert)), of the employer questionnaire (called by the ALJ "Employee Questionnaire completed in October 2017") (R. 24) (citing Ex. 8E (signed by Mr. Schrumm)) and of Ms. Wingert's testimony (R. 15) ("Shelly Wingert, also appeared at the hearing") (R. 21) ("Ms. Wingert testified that …").  Moreover, he noted several times in his decision that he considered all the evidence.  (R. 16) ("careful consideration of all the evidence"), (R. 17, 20) ("careful consideration of the entire record"), (R. 21) ("must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities"), (R. 23) ("claimant's mental impairments have also been considered").

Although the ALJ did not mention his consideration of Plaintiff's husband's statements, since the regulations changed regarding cases filed after March 27, 2017 there has been no requirement to articulate such consideration in cases such as this. The ALJ stated he had considered all the record evidence.  The court's general practice "is to take a lower tribunal at its word when it declares that it has considered a matter." Hackett, 395 F.3d at 1173.  Plaintiff has not demonstrated that her husband's statements compel a different result, and the court sees no reason to depart from its general practice. See also, United States v. Kelley, 359 F.3d 1302, 1304-05 (10th Cir. 2004) (district court must consider certain factors before imposing prison time for probation violation, but court need only say that it has done so); and Andrews v. Deland, 943 F.2d 1162, 1170

(10th Cir. 1991) (refusing to "look behind a district court's express statement that it engaged in a <u>de novo</u> review of the record").

> ### E.      Evaluation of Plaintiff's Allegations of Symptoms

Plaintiff claims the ALJ erroneously evaluated the <u>credibility</u> of her allegations of symptoms pursuant to SSR 96-7p instead of evaluating the <u>consistency</u> of her allegations of symptoms in accordance with SSR 16-3p, which rescinded and replaced the earlier ruling.  (Pl. Br. 17).  She also claims because the ALJ failed to consider SSR 12-2p, he erroneously used negative test findings and normal findings to discount Plaintiff's allegations of symptoms.  As Plaintiff suggests, the ALJ mentioned SSR 96-7p in his decision while considering Plaintiff's allegations of symptoms.  (R. 22) (Because the objective medical evidence does not support Plaintiff's allegations, "it becomes necessary to consider the credibility evaluation factors from Ruling SSR 96-7p along with the record as a whole in order to determine whether the claimant is as limited as she has alleged."), (R. 23) ("Because a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c), 416.929(c) and Social Security Ruling 96-7p describe the kinds of evidence, including the factors below, that the undersigned must consider in addition to the objective medical evidence when assessing the credibility of the claimant's statements.").  However, earlier in the decision the ALJ stated the standard applicable to evaluation of Plaintiff's allegations of symptoms, and in that statement he explained:

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p.

(R. 21).  In both instances where the ALJ mentioned SSR 96-7p he was referring to factors used to evaluate "the credibility of" Plaintiff's allegations of symptoms.  (R, 22, 23).  The credibility factors for evaluating a claimant's allegations of symptoms previously provided in SSR 96-7p are identical in every respect to the factors listed in SSR 16-3p for evaluating the consistency of Plaintiff's allegations of symptoms.  This is unsurprising because both SSR 96-7p and SSR 16-3p explain how the SSA evaluates symptoms in disability claims and are in essence an explanation of how the SSA applies 20 C.F.R. § 404.1529 and § 416.929 ("How we evaluate symptoms, including pain"), and the factors listed are the factors listed in 20 C.F.R. § 404.1529(c)(3), and § 416.929(c)(3) and were identical both before and after March 27, 2017.  Moreover, the applicable regulation never used the term "credibility determination" and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed under SSR 16-3p.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. §§ 404.1529, 416.929).  Further, the Tenth Circuit held its approach to credibility determination under SSR 96-7p was consistent with the approach for evaluating a claimant's allegations of symptoms set forth in SSR 16-3p.  Brownrigg v. Berryhill, 688 Fed. Appx. 542, 546 (10th Cir. 2017).  The ALJ's statements that he applied the factors from SSR 96-7p rather than those from SSR 16-3p is error in form only, not in substance.

The court finds Plaintiff's argument the ALJ erroneously used negative test findings and normal findings to discount Plaintiff's allegations of symptoms is also unavailing.  The framework for a proper analysis of a claimant's allegations of symptoms is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  An ALJ must consider (1) whether the claimant has established a symptom-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, the claimant's symptoms are in fact disabling.  See, Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (explaining the Luna framework).  The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating the claimant's allegations of symptoms:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  The court has recognized a non-exhaustive list of factors which overlap and expand upon the factors promulgated by the Commissioner.  Luna, 834 F.2d at 165-66.  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and

relationship between the claimant and other witnesses, and the consistency
or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at

1489).

The court's review of an ALJ's evaluation of a claimant's allegations of symptoms

is deferential.  Such evaluations are generally treated as binding on review.  Talley v.

Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413

(10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of

fact" and will not be overturned when supported by substantial evidence.  Wilson, 602

F.3d at 1144; accord Hackett, 395 F.3d at 1173.

Here, the ALJ found Plaintiff's "statements concerning the intensity, persistence

and limiting effects of [her] symptoms are not entirely consistent with the medical

evidence and other evidence in the record for the reasons explained in this decision."  (R.

21).  The court has found no less than 11 inconsistencies given by the ALJ to discount

Plaintiff's allegations:  (1) most complaints noted in Plaintiff's treatment records were for

temporary conditions (R. 22, 24); (2) Plaintiff's treatment was "only intermittent" and she

did not follow up after her diagnosis of fibromyalgia by Dr. Regier, id. at 22; (3) Plaintiff

told her providers she had been able to modify her work for her condition and

(4) described her symptoms as mild to moderate, id.; (5) Plaintiff continued to work

throughout the period, and (6) through September 2017, at the significant activity level,

id. at 24; (7) there was "no objective evidence in the record to support that the claimant's

conditions were what caused her to miss work," id.;  (8) Plaintiff refused prescribed

medication to address her symptoms even though (9) Dr. Reiger believed that the medication would provide "'dramatic improvement' in her symptoms," id. (quoting R 497); (10) Plaintiff reported to Dr. Henderson that therapy had been recommended which she could not continue, but "there is nothing in the record to indicate that the claimant ever attended therapy, id.; and (11) although Dr. Henderson examined Plaintiff and diagnosed fibromyalgia, he opined she could perform a range of sedentary work.  Id.

Although the ALJ did note record evidence of testing of Plaintiff which revealed negative results and normal examinations, the court is not convinced that was evidence he relied upon in discounting Plaintiff's allegations of symptoms.  Moreover, the inconsistencies cited above are supported by the evidence and are clearly sufficient to discount Plaintiff's allegations.  The court finds no error in the ALJ's evaluation of Plaintiff's allegations of symptoms.

**F.      The Consultative Examination**

In her final allegation of error, Plaintiff argues Dr. Henderson's consultative examination was erroneously relied upon by the ALJ because Dr. Henderson "did not indicate that he had reviewed any of [Plaintiff]'s records or any of other statements in the file." (Pl. Br. 18-19).  The court does not agree.  The invoice provided with Dr. Henderson's report indicates two line items:  "990800002      Review of medical records and completion of the medical source statement of ability to do work related activities. $55.00;      992050000    Consultation […] $195.04."  (R. 542).  At the end of his report, Dr. Henderson included a price list for Central Medical Consultants' services along with his statement he had provided the examination and Medical Source Statement

and was charging a total fee of $250.04.  (R. 552).  Although Dr. Henderson did not

specifically state he had reviewed Plaintiff's medical records, the records indicate they

had been provided by the agency (R. 542), and Dr. Henderson's provision of and charge

for the services requested at least implies he reviewed the records provided.  Plaintiff has

provided no evidence to suggest otherwise, and the court will not question the integrity of

either the Disability Determination Service or of Dr. Henderson.  Plaintiff has shown no

error in the Commissioner's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated October 19, 2021, at Kansas City, Kansas.

s:/  *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**